**Donald Wayne DUNKIN, Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. 56844.**

Supreme Court of Missouri,
Division No. 1.

March 13, 1972.

Motion for Rehearing or to Transfer to
Court En Banc Denied
April 10, 1972.

Thomas J. Layson, Trenton, for appellant.

John C. Danforth, Atty. Gen., Preston Dean, Asst. Atty. Gen., Jefferson City, for respondent.

WELBORN, Commissioner.

Appeal from denial of relief in proceeding under Supreme Court Rules 27.25 and 27.26, V.A.M.R., from 15-year sentence entered on plea of guilty to charge of forcible rape.

At about 7:30 P.M., January 27, 1970, a 70-year-old resident of Brimson, a town of 100 population in Grundy County, was raped by a man who forced his way into her home. A billfold with identification papers of Donald Dunkin was discovered in the victim's house after the attack. Dunkin had formerly lived in Brimson. His mother lived there at the time of the attack and was acquainted with the victim.

Dunkin was arrested within a short time at his residence in Bethany. He declined to make a statement upon his arrest. The following day, while in jail at Trenton, Dunkin made a statement to Corporal LePage of the Highway Patrol. The statement was made in the presence of another patrolman and the Grundy County sheriff and a deputy. It was reduced to writing by LePage and signed by Dunkin. It detailed Dunkin's activities and included the admission that he had forced his way into a house at Brimson and raped the woman he found there.

Preliminary hearing on the charge of rape was waived and an information filed in the circuit court on January 30, 1970. Dunkin's mother did housework for residents of Trenton, including Mr. Herbert Brown, an attorney. At defendant's mother's request, Mr. Brown undertook his representation.

Brown conferred on numerous occasions with Dunkin and the members of his family. On May 25, 1970, Dunkin, accompanied by Brown, appeared in the circuit court and entered a plea of guilty to the charge. The trial court questioned Dunkin at length to ascertain that his plea was knowledgeable and voluntary. (No complaint of failure to comply with Supreme Court Rule 25.04, V.A.M.R., is made.) The prosecutor made a brief recital of the facts. Mr. Brown made a lengthy statement on behalf of the defendant, requesting lenient treatment because of the defendant's background and limited mental achievement. (There was an examination of defendant at the Fulton State Hospital. The defendant was found capable of understanding the charge and assisting in his defense.) Mr. Brown requested a presentence investigation which the court ordered.

On July 27, 1970, defendant again appeared in circuit court and was sentenced to 15 years' imprisonment. Dunkin was upset by the sentence. According to him, as soon as he got outside the courtroom, he asked Brown to move to set aside the plea of guilty and Brown refused to do so. Brown's version was that Dunkin said he wanted to appeal to the Supreme Court and that he told Dunkin that there could be no appeal from the guilty plea.

The motion to set aside the sentence was filed August 11, 1970, after defendant had been taken to the Department of Corrections. A hearing on the motion was held on December 30, 1970. Appellant, represented by counsel, was present and testified. His mother and sister also testified in his behalf. The sheriff, Corporal LePage and Mr. Brown testified for the state. The trial court subsequently entered findings of fact and conclusions of law, rejecting the claim for relief.

In this court, the essence of appellant's contention is that the evidence in the trial court showed that the appellant's admission of the offense to the law enforcement officers was the result of their promise of leniency and that his subsequent plea was a repetition of the original confession and was rendered involuntary by the promise of leniency which also made his statement involuntary. He also contends that his plea of guilty was involuntary because his attorney urged him to enter such plea, with the assurance that he would receive less than 15 years' imprisonment.

Defendant's testimony at the hearing was that he had drunk a quart of whiskey and taken an LSD tablet on the day of the crime and could recall nothing that hap-

pened after he left his brother's house in Brimson until he was arrested in Bethany. He testified that he signed the statement after the patrolman told him: "If you will sign this statement, I will do everything I can to help you see that you don't get any time. I don't want to see you go to the penitentiary, that it won't help you, it will just make you worse." He stated that although his knowledge of what occurred was based upon what the trooper told him, he signed the statement. "I done what he told me to do."

The trooper's version was that defendant declined to talk when he was first arrested. The next day he talked with defendant at the sheriff's office in the Grundy County jail. He advised defendant of his rights, gave him a written statement concerning them and when he found that defendant could not read the statement, read it to him. Defendant acknowledged that he understood it and signed the waiver. He questioned defendant who denied any knowledge of the crime. The officer told him, "Well, that was fine, he could return to his cell; that we had enough evidence, in my opinion, to convict him in court of forcible rape." Defendant asked what the penalty for the offense was and when he was told of the possibility of a death sentence, defendant wanted to know what could be done to help him if he was involved. "I told him the only thing that would help him from there on out, after the crime had been committed, was his attitude. After that, he gave us his statement, * * *." Corporal LePage also said that he told defendant "By admitting it, it would be better." The sheriff testified that he told defendant that "if he gave us a statement [it] would show his cooperation and we couldn't promise him anything, that it would be better for him."

■ On this evidence, the trial court found that the statement was given voluntarily, without promise of any kind, after defendant had been fully advised of his constitutional rights. By this finding the trial court necessarily rejected appellant's

testimony that the statement was induced by the promise of the patrolman to help appellant and see that he received no-penitentiary time. This determination was for the trial court on the conflicting evidence and its conclusion is not clearly erroneous.

■ In any event, and as the trial court further found, the mere existence of the statement did not render the plea involuntary without regard for the voluntariness of the statement. Maxwell v. State, Mo. Sup., 459 S.W.2d 388, 392 [2]; Mitchell v. State, Mo.Sup., 447 S.W.2d 281, 283 [1]; McMann v. Richardson, 397 U.S. 759, 771, 90 S.Ct. 1441, 25 L.Ed.2d 763. The rule that involuntariness of a first confession will affect the validity of a subsequent confession (see State v. Nagle, 326 Mo. 661, 32 S.W.2d 596, 601 [4, 5]) applies when the issue is the use and admissibility in evidence of the subsequent confession.

■ The appellant, in his testimony, made no effort to relate the alleged promise of the patrolman or the existence of the statement to the eventual plea of guilty. He focused blame for that upon his attorney's alleged statement to him in the jail, after advising another prisoner to plead guilty and accept a two-year sentence, he turned to appellant and said: "You're in more trouble than [the other prisoner], but I think I can get you off with two years."

Mr. Brown testified that he investigated the state's case and advised defendant that in his opinion he would likely get life imprisonment if he went to trial or at least 25 years. He made no promise to defendant of what the punishment would be on a plea of guilty. He did advise defendant that in his judgment the better procedure would be a plea of guilty but he did not make an effort to get him to make such a plea. He gave the same advice to members of appellant's family, who in turn urged appellant to accept the advice.

■ The trial court made no express finding on the appellant's testimony that Brown said that he thought he could get

appellant off with two years and Brown's denial that such statement had been made. Even if appellant's testimony is believed, the statement he attributed to Brown is not such as would be a basis for attacking the plea. United States v. Webb, 1st Cir., 433 F.2d 400, 403–404 [4, 5], cert. den. 401 U.S. 958, 91 S.Ct. 986, 28 L.Ed.2d 242. Implicit in the court's findings on the issue is the resolution of the conflict in testimony against appellant. The trial court's findings find ample support in the record of the proceedings upon entry of the plea of guilty, introduced in evidence on the 27.26 hearing, and in the further evidence at such hearing. The trial court's findings are not clearly erroneous. Supreme Court Rule 27.26(j), V.A.M.R.

Judgment affirmed.

HIGGINS, C., concurs.

PER CURIAM:

The foregoing opinion by WELBORN, C., is adopted as the opinion of the court.

HOLMAN, P. J., SEILER, J., and FINCH, Alternate Judge, concur.

BARDGETT, J., not sitting.